**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated:  March 22 2016

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-31039 |
| | ) | |
| Brenda S. Bahnsen, | ) | Chapter 7 |
| | ) | |
|               Debtor. | ) | Adv. Pro. No. 15-3015 |
| | ) | |
| Brenda S. Bahnsen and | ) | Judge John P. Gustafson |
| James Bahnsen, | ) | |
| | ) | |
|               Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Discover Financial Services, Inc., | ) | |
| | ) | |
|               Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

    Plaintiff Brenda S. Bahnsen ("Mrs. Bahnsen" or "Debtor") is the debtor in the underlying Chapter 7 case, and her co-plaintiff, James Bahnsen ("Mr. Bahnsen"), is her husband, who was not a debtor in the underlying Chapter 7 case. On February 4, 2015, Mrs. and Mr. Bahnsen (collectively, "Plaintiffs") commenced this adversary proceeding, requesting that the court enforce injunctive relief "against Defendant for violation of 11 USC § 524 and 11 USC § 524(a)(2), and for

violation of 15 U.S.C. §§ 1692-1692(o)." [Doc. # 1, p. 3].

Defendant Discover Bank ("Defendant" or "Discover"), incorrectly identified as Discover Financial and Discover Card in the Complaint, was listed as an unsecured creditor in Mrs. Bahnsen's Chapter 7 case. [Case No. 12-31039, Doc. # 1, p. 26].

Plaintiffs allege that Defendant, a state-chartered bank with its principal place of business located in Delaware, acted by and through its agents, servants, and/or employees, "to collect on a discharged debt [of Mrs. Bahnsen] through the husband, James Bahnsen." [Doc. # 1, ¶ 12]. Plaintiffs also allege that after being properly notified of Mrs. Bahnsen's discharge, Defendant "continued to contact and harass Plaintiff[s] for past due payments, notwithstanding an order of discharge granted" by this court. [*Id.* at ¶ ¶ 14-15]. Plaintiffs request that this court "enforce injunctive relief of the bankruptcy [discharge]", and in so doing, order Defendant to cease any and all collection efforts. They also seek $20,000 in punitive damages, legal fees, and any other remedy the court would find appropriate. [*Id.* at p. 5].

This proceeding is now before the court on Defendant's Motion for Summary Judgment ("Defendant's Motion") [Doc. # 27], Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") [Doc. # 29], and Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's Memo") [Doc. # 32].

Having considered the parties' respective arguments, for the reasons that follow, Defendant's Motion will be granted as to Mr. Bahnsen and denied as to Mrs. Bahnsen, and Plaintiff's Motion will be denied.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in dispute. On March 12, 2012, Mrs. Bahnsen filed her Chapter 7 bankruptcy petition in this court. [Case. No. 12-31039]. Mr. Bahnsen was not a joint debtor in the underlying bankruptcy case. In Mrs. Bahnsen's petition, Discover Financial Services was listed in Schedule F as an unsecured debtor, with a claim of $11,695.72.[1]

---

[1]/ Plaintiffs' Complaint states that Defendant was listed on Mrs. Bahnsen's petition as being owed a total balance of $12,349.63. [Doc. # 1, ¶ 10]. Defendant admits this allegation in its Answer. [Doc. # 12, ¶ 10]. However, according to Mrs. Bahnsen's petition, "Discover Fincl [*sic*] Services" is listed as having a total claim of $11,695.72. [Case. No. 12-31039, Doc. # 1, p. 26]. A letter sent to Mr. Bahnsen from Thomas & Thomas, the law firm attempting to collect the debt on Defendant's behalf, stated that as of June 11, 2014, Mr. Bahnsen owed $12,349.63. [Doc. # 1, p. 11].

2

[Doc. # 1, Pl. Ex. A, p. 7].

On March 15, 2012, Defendant received notice of Mrs. Bahnsen's bankruptcy filing. [Doc. # 27, p. 5]. Later, Defendant received a 341 hearing notice through the court's electronic noticing system, notifying Discover that the deadline to file a complaint objecting to Mrs. Bahnsen's discharge was July 2, 2012. [Doc. # 1, Pl. Ex. B, p. 9]. Defendant neither responded nor filed any objection to the discharge [Doc. # 1, ¶ 11]. Mrs. Bahnsen received her discharge on July 5, 2012 [Case No. 12-31039, Doc. # 17], and Defendant received notice of Mrs. Bahnsen's discharge on July 7, 2012. [Doc. # 27, p. 2]. Defendant does not dispute that the debt owed to it by Mrs. Bahnsen was discharged on July 5, 2012.

According to Defendant's records relating to Brenda Bahnsen's (nee Schaefer) credit card account ("the Account"), Mr. Bahnsen was added to the Account, pursuant to a telephone request, on November 3, 1989. Defendant asserts that Mr. Bahnsen, in accordance with the request made over the telephone, was added to the Account as a "Joint Applicant - Spouse", as opposed to an "Authorized User", the only other available option that could have been filled in on Defendant's "Pre-Approved Telemarketing" form. [Doc. # 27-1, Def. Ex. 1, p. 5].

James Ball ("Mr. Ball"), an employee of Discover Products, Inc. (a subsidiary of Discover Bank), stated in his affidavit that he reviewed Defendant's records, certifying that Mr. Bahnsen "was added to the Account by telephone request as a 'Joint Applicant - Spouse.'" [Doc. # 27-1, Def. Ex. 1, ¶ 6]. The court notes that it is unclear whether Plaintiffs or Defendant initiated the telephone call that resulted in Mr. Bahnsen being added to the Account as a joint applicant. Discover's "Pre-Approved Telemarketing" form only shows that Discover spoke to "Lead" on "11/03/89", and Verification of the change to the Account was made by "Call Back". [Doc. # 27-1, p. 5].

Mr. Ball also testified in his affidavit that on the same day Discover received notice (March 15, 2012) of Mrs. Bahnsen's filing, Defendant removed Mrs. Bahnsen's name from the Account, leaving Mr. Bahnsen as the only name associated with the account. [*Id.* at ¶ 7]. This name change appears to be reflected in Defendant's Exhibit B. [*Id.*, pp. 6-7]. It was not until August 9, 2013 that Defendant placed the Account, solely in Mr. Bahnsen's name, for collection. Mr. Ball claims that as the Account was solely associated with Mr. Bahnsen at that time, Defendant's collection counsel "would only have received Mr. Bahnsen's name as the debtor on the Account." [*Id.* at ¶ 8].

Plaintiffs state that the telemarketing form, which includes Mrs. Bahnsen's name, date of

3

birth, and social security number, with "James Bahnsen" being typed on the form, is not adequate proof to show that James Bahnsen ever spoke to Discover during the aforementioned telephone call, nor does it show that he provided "express and explicit consent to assume financial liability for the credit line." [Doc. # 29, pp. 4-5].

In Plaintiffs' response to Defendant's interrogatories, when asked to "[a]dmit that Plaintiffs requested that Mr. Bahnsen be added as a Joint Applicant on the Account", Plaintiffs stated that "[n]either Mr. Bahnsen or Mrs. Bahnsen made this request." [Doc. # 27-2, Def. Ex. 2, p. 3]. In response to another of Defendant's interrogatories, Plaintiffs admit that all correspondence they received from Defendant via U.S. mail was addressed to Mr. Bahnsen only. [*Id.* at p. 2].

When asked to admit that "neither Discover nor its agents placed any telephone calls to Plaintiffs after March 12, 2012 concerning the [d]ebt", Plaintiffs responded that "on or about the summer and fall of 2014", they received "a few calls from third party collectors/agents for Discover Card", specifically listing calls received from "Thomas and Thomas" and "FMS Inc". Thomas & Thomas was the law firm employed by Defendant to collect the debt from Mr. Bahnsen. No information regarding "FMS Inc" has been provided to the court, other than the fact that the corporation is listed in an answer to Defendant's interrogatories.

In response to Defendant's attempts to collect on a debt that Plaintiffs argue was discharged, Plaintiffs filed this adversary complaint on February 4, 2015. In their complaint, Plaintiffs ask that the court enforce injunctive relief under 11 U.S.C. § 524(a)(2) "by ordering the Defendant to cease its collection efforts, grant punitive damages of $20,000, legal fees," and any other relief that the court may find appropriate. [Doc. # 1, p. 5]. This case is now before the court on Defendant's Motion for Summary Judgment [Doc. # 27], Plaintiffs' Motion for Summary Judgment [Doc. 29], and Defendant's Memorandum in Opposition to Plaintiffs' Motion [Doc. # 32].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*. "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999).

The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate. "When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Parks v. LaFace Records*, 329 F.3d 437, 444-445 (6th Cir. 2003)(*quoting, B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* §2720 (1998).

**II. Plaintiffs' Claim Under § 524(a)(2) and Motion for Summary Judgment**

In their Complaint brought pursuant to 11 U.S.C. § 524(a)(2), Plaintiffs allege that Defendant was attempting to collect on Mrs. Bahnsen's discharged debt through her husband, Mr. Bahnsen. Because Mrs. Bahnsen's debt to Defendant was previously discharged, Defendant's actions to collect from Mr. Bahnsen, allegedly through Mrs. Bahnsen, would be in violation of Plaintiffs'

5

discharge injunction. Plaintiffs seek sanctions that include a cessation of collection efforts by Defendant, punitive damages, legal fees, and any other just relief that the court may find appropriate.

Mrs. Bahnsen, being the only debtor in the underlying Chapter 7 case, received her discharge on July 5, 2012. [Case No. 12-31039, Doc. # 17]. A Chapter 7 bankruptcy discharge "discharges the debtor from all debts that arose before the date of the order for relief under this chapter...." 11 U.S.C. § 727(b). Once an order granting a discharge is entered by the court, and to effectuate the "fresh start" intended by a bankruptcy discharge, § 524(a) of the Bankruptcy Code gives rise to an injunction against "an act, to collect, recover or offset any such debt [discharged under § 727] as a personal liability of the debtor. . . ." 11 U.S.C. § 524(a)(2). *See, In re Miller,* 247 B.R. 224, 228 (Bankr. E.D. Mich. 2000), *aff'd,* 282 F.3d 874 (6th Cir. 2002)(*citing, Green v. Welsh,* 956 F.2d 30, 33 (2d Cir. 1992)).

The court recognizes that pursuant to Federal Rule of Bankruptcy Procedure 9020 and 9014, the traditional way to bring an action for violation of the discharge injunction, and to find a defendant in contempt of the court that issued the discharge order, is by motion. But, because an adversary proceeding provides a defendant with more, and not less, procedural protection than in a Rule 9014 contested matter brought by motion, "courts routinely hear contempt actions brought as adversary proceedings." *Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 32 (Bankr. N.D. Ohio 2008). *See also, Brannan v. Wells Fargo Home Mortgage, Inc. (In re Brannan )*, 485 B.R. 443, 455 (Bankr. S.D. Ala. 2013); *Palazzola v. City of Toledo (In re Palazzola)*, 2011 WL 3667624, *11, 2011 Bankr. LEXIS 3225, *31-32 (Bankr. N.D. Ohio Aug. 22, 2011); *Beck v. Gold Key Lease, Inc. (In re Beck )*, 272 B.R. 112, 130 n.25 (Bankr. E.D. Pa. 2002).

In the Sixth Circuit, there is no statutory private right of action for damages under 11 U.S.C. § 524 or 11 U.S.C. § 105 for violation of the discharge injunction. *Pertuso v. Ford Motor Co.,* 233 F.3d 417, 421-23 (6th Cir. 2000). But, a violation of the discharge injunction does expose a creditor to potential contempt of court. *Id.*; *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916 (7th Cir.2001); *Lohmeyer v. Alvin's Jewelers (In re Lohmeyer)*, 365 B.R. 746, 749 (Bankr. N.D. Ohio 2007). "A creditor who undertakes to collect a discharged debt from a debtor violates the discharge injunction and is in contempt of the court that issued the discharge order." *Fonner v. Overdorf (In re Fonner)*,

262 B.R. 350, 358 (Bankr. W.D. Pa. 2001)[2]. If contempt is established, the injured party may be able to recover damages as a sanction for the contempt. *Chambers v. GreenPoint Credit (In re Chambers)*, 324 B.R. 326, 329 (Bankr.N.D.Ohio 2005).

In a civil contempt proceeding, three elements must be established by clear and convincing evidence: "(1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite." *Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) (citing *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)). In the context of the discharge injunction, this means that a debtor must prove that the creditor "(i) violated the discharge injunction (and thus the order granting the discharge) and (ii) did so with knowledge that the injunction was in place." *Gunter v. Kevin O'Brien & Assocs. Co. LPA (In re Gunter)*, 389 B.R. 67, 72 (Bankr. S.D. Ohio 2008). *See also, In re Holley,* 473 B.R. 212, 215 (Bankr. E.D. Mich. 2012) *aff'd*, 2013 WL 791549 (E.D. Mich. Mar. 4, 2013)(*quoting, In re Frambes,* 2012 WL 400735, at *5 (Bankr. E.D. Ky. Feb. 7, 2012)).

Before the court addresses Mrs. Bahnsen's claim, the court must address the issue of standing as it pertains to Mr. Bahnsen.

> Standing is "the threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.' " *Coal Operators and Associates, Inc. v. Babbitt,* 291 F.3d 912, 915-16 (6th Cir.2002) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,*

---

[2]/ "The distinction between a statutory right of action and civil contempt is more than just nomenclature." *In re Lohmeyer*, 365 B.R. 746, 755 n.2 (Bankr. N.D. Ohio 2007). "The primary purpose of a civil contempt order is to compel obedience to a court order and compensate for injuries caused by noncompliance." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir.2000)(quoting *TWM Manuf. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983)). The party alleging contempt has the burden of establishing contempt by clear and convincing evidence, *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 722 (6th Cir.1996), not just by a preponderance of the evidence as is routine in civil matters. The sanctions for contempt are intended to be either compensatory, based on evidence of actual loss, *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391 (6th Cir.1991), or coercive through payments to the court to abate violation of the order, *id.* at 1400. Punitive damages as requested in the complaint in this case are not compensatory in nature. The weight of authority is that bankruptcy courts lack authority to punish and impose sanctions for criminal contempt. *See, Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192–1195 (9th Cir.2003); *but see, In re Perviz*, 302 B.R. 357, 373 (Bankr. N.D. Ohio 2003). Finally, the imposition of sanctions for civil contempt is within the sound discretion of the bankruptcy court and reviewed for abuse of discretion. *Musslewhite v. O'Quinn (In re Musslewhite*), 270 B.R. 72, 78 (S.D. Tex. 2000).

454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators,* 291 F.3d at 916. Thus, the constitutional requirements for standing are proof of injury in fact, causation, and redressability. *Ibid.*

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions. *See ibid.* First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. 2197 (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *Coal Operators,* 291 F.3d at 916 (citing *Valley Forge,* 454 U.S. at 474-75, 102 S.Ct. 752). Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Ibid.* "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Coal Operators,* 291 F.3d at 916 (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir.1991)).

*Bli Farms v. Greenstone Farm Credit Services, FCLA (In re Bli Farms ),* 312 B.R. 606, 616 (E.D. Mich. 2004).

Here, the court will not attempt to analyze a possible violation of the discharge injunction against Mr. Bahnsen. Mr. Bahnsen did not receive a discharge, and therefore, any attempts to collect on an alleged debt owed by Mr. Bahnsen is not in violation of any discharge injunction. Mr. Bahnsen suffered no actual or threatened injury due to a violation of discharge injunction. He has no claim before this court, and as such, will be dismissed as a plaintiff from the Complaint.

Nor is Mr. Bahnsen a party who may file suit in which the rights of a third party is asserted, also known as the third party standing doctrine. This doctrine is limited, and states that a third party has standing where "(1) the relationship between the [litigant] and the third party is such that the [litigant] is nearly as effective a proponent of the of the third party's right as the third party itself, and (2) there is some obstacle to the third party asserting the right." *Knight v. Alabama*, 14 F.3d 1534, 1554 (11th Cir.1994) (*citing Singleton v. Wulff*, 428 U.S. 106, 114–16, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976). Further, federal courts ordinarily decline to exercise jurisdiction when a party seeks to vindicate rights belonging to others, rather than their own legal writs. *See Warth v. Seldin*, 422 U.S. 490 (1975); *In re Veal*, 450 B.R. 897 (9th Cir. BAP 2011). Here, the court

8

will not allow Mr. Bahnsen the opportunity to vindicate a claim belonging to his wife.

Bankruptcy courts are courts of limited jurisdiction, and as such, bankruptcy courts find their jurisdictional authority and limitations in statute. *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493 (1995). A bankruptcy court can only deal with matters that arise under the Bankruptcy Code. As Mr. Bahnsen has no claim arising under any statute of the Bankruptcy Code, whether or not he is liable for the Discover debt is an issue for another court.

However, if attempts were made to collect from Mrs. Bahnsen, post-discharge, a violation of the discharge injunction may have occurred. In the case at hand, there is no question that Defendant had knowledge of Mrs. Bahnsen's bankruptcy discharge, satisfying the second element set forth in the *Gunter* decision. In its Motion, Defendant admits that "[it] received notice of [Mrs. Bahnsen's] discharge" on July 7, 2012. [Doc. # 27, p. 2]. Mr. Ball's affidavit also confirms that Defendant received notice of Mrs. Bahnsen's discharge on July 7, 2012. [Doc. # 27-1, Def. Ex. 1, ¶ 7].

But, Plaintiff has not proven the first *Gunter* element by clear and convincing evidence, that Defendant violated the discharge injunction entered in Mrs. Bahnsen's Chapter 7 case. As the record stands before the court, there is clear and convincing evidence that Plaintiff received debt collection letters and debt settlement offers mailed to her at her shared residence with Mr. Bahnsen. And while Mrs. Bahnsen and Mr. Bahnsen lived at the same address, it appears that each letter was addressed to Mr. Bahnsen and Mr. Bahnsen only. No letters or debt settlement offers were addressed to Plaintiff. [Doc. # 1, Pl. Ex. C, pp. 11-15]. Plaintiff and Mr. Bahnsen admitted as much in their interrogatories, stating that "all correspondence through U.S. mail was addressed to Mr. Bahnsen." [Doc. # 27-2, Def. Ex. 2, pp. 2-3].

What is not clear is whether the phone calls made to the Bahnsen residence were ever made in an attempt to collect from Mrs. Bahnsen. Section 524(a)(2) prohibits "any act to collect a discharged debt, whether by letter, phone call or other means." 4 *Collier on Bankruptcy P* 524.02[2][a],[b] (15th ed. rev.2008); *see also, In re Eastman*, 419 B.R. 711, 725 (Bankr. W.D. Tex. 2009); S.R. Rep. No. 95–989, at 5866 (1978), H.R.Rep. No. 95–595, at 6321 (1977) (stating that Congress intended the discharge injunction to be a "total prohibition on debt collection efforts.").

Plaintiffs' Complaint alleges that Defendant "has continued to contact and harass Plaintiff for past due payments, notwithstanding an order of discharge being granted...." [Doc. # 1, ¶ 14]. In

9

the interrogatories provided to the court by Defendant, Defendant asked Plaintiffs to admit that neither Discover nor its agents placed any telephone calls to Plaintiffs after Mrs. Bahnsen filed her petition on March 12, 2012. Plaintiffs responded that "on or about the summer and fall of 2014, the Bahnsen's received a few calls from third party collectors/agents for [Defendant]."

While Plaintiffs did not specifically answer that only Mr. Bahnsen received the collection calls, they did list two collectors or agents of Defendant, Thomas & Thomas and FMS Inc., as having made the calls. [Doc. # 27-2, Def. Ex. 2, p. 2]. Defendant denies that either it or its agents ever explicitly directed collection phone calls to Mrs. Bahnsen, but no proof is offered to satisfy the court that no genuine issue of material fact exists when the evidence is viewed in the light most favorable to the non-moving party. [Doc. # 27, p. 3].

A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party, and a factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298–99 (6th Cir. 2008). *See also, Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

Because the court cannot determine whether phone calls were made attempting to collect from Mrs. Bahnsen, a genuine issue of material fact still exists as to whether Defendant violated Mrs. Bahnsen's discharge injunction under Section 524(a)(2). As such, Plaintiffs' Motion for Summary Judgment is denied.

### III. Defendant's Motion for Summary Judgment on Plaintiffs' Claim Under § 524(a)(2)

Defendant's Motion seeks summary judgment on Plaintiffs' only claim in their Complaint, Claim I, which is brought pursuant to 11 U.S.C. § 524(a)(2). Plaintiffs argue that Defendant is attempting to collect on Mrs. Bahnsen's discharged debt through her husband, Mr. Bahnsen. Plaintiffs allege that because Mrs. Bahnsen's debt to Defendant was previously discharged, Defendant's actions to collect from Mrs. Bahnsen through Mr. Bahnsen would be in violation of Plaintiffs' discharge injunction.

Defendant argues in its Motion that "[t]he undisputed evidence on the record shows that all of Discover's attempts to collect on the Account were directed only to James Bahnsen, and not to Brenda Bahnsen." [Doc. # 27, p. 6]. Because Defendant was attempting to collect on the Account solely from Mr. Bahnsen, who did not receive a Chapter 7 discharge, Discover argues that there was

15-03015-jpg    Doc 33    FILED 03/22/16    ENTERED 03/22/16 16:17:46    Page 10 of 12

no violation of Mrs. Bahnsen's discharge injunction.

Much of Plaintiffs' Motion is devoted to Mr. Bahnsen's possible joint liability on the Account. [Doc. # 29, pp. 2-6]. As Defendant points out in its Memorandum in Opposition, that issue is irrelevant to the only claim pled in the Complaint. [Doc. # 32, p. 2]. Any questions as to whether Mr. Bahnsen was lawfully added to the Account as a joint applicant, or whether Mr. or Mrs. Bahnsen ever made a phone call to add Mr. Bahnsen as a joint applicant or authorized user, is irrelevant to the question the court is addressing in this Opinion. As stated previously herein, Mr. Bahnsen has no standing to bring this action and will be dismissed as a plaintiff. He has no claim under the Bankruptcy Code.

Pursuant to the only claim made in Plaintiffs' Complaint, Claim I, the court is tasked with deciding whether Mrs. Bahnsen's discharge injunction was violated by Defendant's efforts to collect on a debt. The court need not decide whether any collection efforts made on Mr. Bahnsen violated his bankruptcy discharge, because he did not receive one.

As discussed in the portion of this Opinion denying Plaintiffs' Motion, a genuine issue of material fact still exists. Defendant posits that "the undisputed facts show that after Brenda Bahnsen's debt was discharged, [it] attempted to recover on the Account *only* from James Bahnsen...." [Doc. # 32, p. 2]. That argument is not "undisputed", as Plaintiffs clearly answered in their interrogatories that they received phone calls "on or about the summer and fall of 2014" [Doc. # 27-2, Def. Ex. 2, p. 2], which occurred well after Mrs. Bahnsen received her discharge in 2012. [Case. No. 12-31039, Doc. # 17]. Presumably, there will be testimony on that issue. As no depositions have been taken in this case, the court does not know what that testimony will be.

It appears to the court that there is conflicting evidence regarding what collection activities occurred during the phone calls made by agents of Defendant post-discharge. Because the court cannot determine whether collection calls were attempts to collect from Mrs. Bahnsen, a genuine issue of material fact still exists as to whether Defendant violated Mrs. Bahnsen's discharge injunction under Section 524(a)(2). As such, Defendant's Motion for Summary Judgment is denied.

## CONCLUSION

For the foregoing reasons, good cause appearing,

**IT IS ORDERED** that due to a lack of standing, James Bahnsen is hereby dismissed as a plaintiff in this action; and

11

**IT IS FURTHER ORDERED** that Plaintiff Brenda S. Bahnsen's Motion for Summary Judgment [Doc. # 29] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** Defendant's Motion for Summary Judgment [Doc. # 27] be, and hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that this matter is set for further hearing **on April 12, 2016 at 11:00 a.m.**

###